James R. Hawkins (SBN 192925)
    james@jameshawkinsaplc.com
Christina M. Lucio (SBN 253677)
    christina@jameshawkinsaplc.com
Mitchell J. Murray (SBN 285691)
    mitchell@jameashawkinsaplc.com
JAMES HAWKINS APLC
9880 Research Drive, Suite 200
Irvine, CA 92618
Tel:  (949) 387-7200
Fax: (949) 387-6676

Attorneys for Plaintiffs MANUEL VIGUERAS and GENNY VASQUEZ,
on behalf of themselves and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MANUEL VIGUERAS, on behalf of himself individually and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RED ROBIN INTERNATIONAL, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS RED ROBIN BURGER SPIRITS EMPORIUMS, a Nevada corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No:  8:17-cv-01422-JVS (DFMx)<br><br>[Originally Orange County Superior Court Case No.: 30-2017-00931770-CU-OE-CXC]<br><br>Assigned to Hon. James V. Selna<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**<br><br>Hearing Date:  July 20, 2020<br>Hearing Time:  1:30 p.m.<br>Courtroom:  10C<br><br>Complaint Filed:  July 14, 2017<br>Trial Date:  February 25, 2020 |

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    THE PARTIES AND SETTLEMENT CLASS ....................................... 2

    A.    Plaintiffs. ....................................................................................... 2

    B.    Defendant. ...................................................................................... 2

    C.    The Settlement Class ...................................................................... 3

III.   PROCEDURAL AND LITIGATION HISTORY ................................... 4

    A.    *Vigueras* I Action. ......................................................................... 4

    B.    *Vigueras* II Action. ....................................................................... 4

    C.    Class Certification. ......................................................................... 5

    D.    Decertification. ............................................................................... 5

    E.    *Vigueras* I Motions for Summary Judgment/Adjudication. ................ 5

    F.    *Vigueras* II Motion for Summary Adjudication. ............................ 5

    G.    Mediations. ..................................................................................... 6

    H.    *Vigueras* I Trial. ........................................................................... 6

IV.    DISCOVERY HISTORY ....................................................................... 6

V.     SUMMARY OF PROPOSED SETTLEMENT TERMS ....................... 7

    A.    The Gross Settlement Amount. ....................................................... 7

    B.    The Net Settlement Amount. .......................................................... 8

    C.    Formula for Calculation of Individual Settlement Payments to Participating Class Members. ......................................................... 8

    D.    Formula for Calculation of Individual PAGA Payments to   PAGA Group Members. .............................................................................. 9

    E.    The Settlement Administrator and Notice to the Class. ................... 10

    F.    The Released Claims. ...................................................................... 11

VI.    SUMMARY OF PROPOSED SETTLEMENT TERMS THE CLASS HAS BEEN CERTIFIED. ...................................................................... 12

VII.   THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT AND SET A FINAL APPROVAL HEARING ............................................................................................... 12

A.    Strength of Plaintiffs' Case and the Risk, Expense, Complexity
      and Likely Duration of Further Litigation. ........................................ 14

B.    The Extent of Discovery and Stage of the Proceedings Support the
      Settlement ............................................................................................. 15

C.    The Settlement is the Product of Serious, Informed and Non-
      Collusive Negotiations between Experienced Wage and Hour
      Counsel .................................................................................................. 16

D.    The Proposed Settlement is a Reasonable Compromise of Claims .... 17

      1.    Plaintiffs' Meal and Rest Period Claims ................................. 19

      2.    Plaintiffs' Unreimbursed Expenses Claim .............................. 21

      3.    Plaintiffs' PAGA Claim ........................................................... 21

VIII.   CLASS COUNSELS' ATTORNEYS' FEES REQUEST AND CLASS
        ENHANCEMENT PAYMENTS. ................................................................ 23

A.    Motion for Award of Attorneys' Fees and Litigation Costs .............. 23

B.    Class Representatives Enhancement Payments. ................................. 24

IX.    CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**

*Armstrong v. Bd. of Sch. Directors*,

    616 F.2d 305 (7th Cir. 1980) ...................................................................13

*Berry v. School Dist. of City of Benton Harbor*,

    184 F.R.D. 93 (W.D. Mich. 1998) ...........................................................13

*Boyd v. Bechtel Corp.*,

    485 F. Supp. 610 (N.D. Cal. 1979) ....................................................16, 17

*Brinker v. Superior Court*,

    53 Cal. 4th 1004 (2012) ..........................................................14, 17, 20

*Brotherton v. Cleveland*,

    141 F. supp. 2d 907 (S.D. Ohio 2001) .....................................................24

*Caliber Bodyworks, Inc. v. Superior Court*,

    134 Cal. App. 4th 365 (2005) ..................................................................21

*Cardenas v. McLane Foodservice, Inc.*,

    2011 U.S. Dist. LEXIS 13126, (C.D. Cal. 2011) ...................................22

*Carrington v. Starbucks Corp.*,

    30 Cal. App. 5th 504 (2018) ....................................................................22

*Dunleavy v. Nadler*,

    213 F.3d 454 (9th Cir. 2000) ...................................................................12

*Ellis v. Naval Air Rework Facility*,

    87 F.R.D. 15 (N.D. Cal. 1980), ...............................................................17

iv

*Felzen v. Andreas*,

    134 F.3d 873 (7th Cir. 1998) ...................................................................... 13

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,

    307 F.3d 997 (9th Cir. 2002). ..................................................................... 23

*Fisher Bros. v. Cambridge Lee Industries, Inc.*,

    630 F.Supp. 482 (E.D. Pa. 1985) ............................................................... 17

*Fleming v. Covidien*,

    2011 U.S. Dist. LEXIS 154590 (C.D. Cal. 2011) ...................................... 22

*Glass v. UBS Financial Services*,

    2007 U.S. Dist. LEXIS 8476, (N.D. Cal. Jan. 26, 2007) ........................... 24

*Hamilton v. Wal-Mart Stores,* Inc.,

    2019 U.S. Dist. LEXIS 77699 (C.D. Cal. Mar. 4, 2019) ........................... 20

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) .................................................................... 13

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F. 3d 454 (9th Cir. 2000) ..................................................................... 19

*In re Mid-Atlantic Toyota Antitrust Litig.*,

    564 F. Supp. 1379 (D. Md. 1983) ............................................................... 13

*In re Omnivision Technologies, Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................... 17, 19

*In re Pac. Enters. Sec. Litig.*,

    47 F.3d 373 (9th Cir. 1995) ................................................................. 23

*In re Taco Bell Wage & Hour Actions*,

    2016 U.S. Dist. LEXIS 48557, (E.D. Cal. Apr. 6, 2016) ..................... 22

*Linney v. Cellular Alaska Partnership*,

    151 F.3d 1234 (9th Cir. 1998) ...................................................... 12, 19

*Makabi v. Gedalia*,

    2016 Cal. App. Unpub. 1489, (2nd Dist. Ct. of App. Mar. 6, 2016) ................. 22

*Officers for Justice v. Civil Serv. Comm'n*,

    688 F.2d 615 (9th Cir. 1982) ............................................................ 19

*Rodriguez v. W. Publ'g Corp.*,

    No. CV-05-3222 R(MCx), 2007 U.S. Dist. LEXIS 74849, (C.D. Cal. Aug. 10,

    2007) ................................................................................................ 16

*Singer v. Becton Dickinson & Co.*,

    2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010) ..................... 24

*Six Mexican Workers v. Ariz. Citrus Growers*,

    904 F.2d 1301 (9th Cir. 1990) ........................................................... 23

*Staton v. Boeing Corp.*,

    327 F.3d 938 (9th Cir. 2003) ............................................................. 24

*Torrisi v. Tucson Elec. Power Co.*,

    8 F.3d 1370 (9th Cir. 1993) .............................................................. 13

*Van Vranken v. Atlantic Richfield Co*.,

    901 F. Supp. 294 (N.D. Cal. 1995)....................................................................24

**STATUTES**

Cal. Lab. Code § 226.7 ............................................................................14, 19

Cal. Lab. Code § 2699 ...................................................................................8

Cal. Lab. Code § 2699(e)(1) ...........................................................................21

Cal. Lab. Code § 2699(f) ...............................................................................21

Cal. Lab. Code § 2699(g) ...............................................................................21

Cal. Lab. Code § 512 .............................................................................14, 20

FRCP  23(e) .................................................................................12, 13

Wage Order No. 5-2001 .................................................................................14

**<u>TREATISES</u>**

Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (2002).............12, 13

## I.  INTRODUCTION

This motion seeks preliminary approval of a certified wage and hour class and representative action settlement by and between Plaintiffs Manuel Vigueras and Genny Vasquez, on behalf of themselves and all others similarly situated ("Plaintiffs"), and Defendant Red Robin International, Inc. ("Defendant" or "Red Robin"). The proposed settlement resolves the present action pending before this Court, titled *Manual Vigueras v. Red Robin International, Inc.*, Case No. 8:17-cv-01422-JVS (DFMx) ("*Vigueras I*") and the pending civil action pending before the Superior Court of California for the County of Orange, titled *Manuel Vigueras, et al. v. Red Robin International, Inc.*, Case No. 30-2017-00945592-CU-OE-CXC ("*Vigueras II*") (collectively, the "Actions")[1].

The Joint Stipulation of Class and Representative Action Settlement ("Settlement Agreement") provides for a Gross Settlement Amount of $8,500,000.00 to all persons who were employed by Red Robin International, Inc. as non-exempt, hourly employees at Red Robin's restaurants in California from July 14, 2013 to October 23, 2018 (the "Class Period") and who were not excluded as part of Defendant's motion to decertify the class based upon pre-dispute arbitration agreements signed before July 14, 2017 (the "Class" or "Class Members"). The Gross Settlement Amount includes a PAGA Penalty Payment of $250,000.00 to all persons who were employed by Red Robin International, Inc. as non-exempt, hourly employees at Red Robin's restaurants in California from September 21, 2016 to July 15, 2020 (the "PAGA Group Members") (the Class Members and PAGA Group Members are collectively referred to as the "Settlement Class" or "Settlement Class Members"). The Settlement Agreement is attached as Exhibit A to the Declaration of Christina M. Lucio ("Lucio Decl.").

After deductions for requested attorney's fees of $2,833,050.00 (33.33% of

---

[1] Pursuant to the Settlement Agreement, Plaintiff will file the Consolidated Amended Complaint combining the allegations, violations, and causes of action

the GSA), litigation costs not to exceed $375,000.00, class representative enhancements payments of $37,500.00 to Plaintiff Vigueras and $17,500.00 to Plaintiff Vasquez, Private Attorneys General Act ("PAGA") Penalty Payment for the settlement claims under PAGA of $250,000.00 to be distributed to PAGA Group Members, and estimated settlement administration costs of $135,000.00, the Net Settlement Amount ("NSA") to be distributed to the Class Members totals approximately $4,851,950.00.

As discussed in detail below, Plaintiffs seek approval of the proposed settlement as fair, reasonable and adequate and ask the Court to set dates for providing notice of settlement, requests for exclusion or objection, a final approval and fee hearing date, along with a briefing schedule.

## II.   THE PARTIES AND SETTLEMENT CLASS

### A.   Plaintiffs.

Plaintiff Manuel Vigueras is a current hourly, non-exempt restaurant employee of Red Robin.  He was hired in or about February 2014.  He has worked as a server, bartender, expediter, cocktail server, FOH trainee, and shift supervisor for the company.  While he was primarily based at the Irvine Spectrum, he has also worked at other locations, including Cypress, Santa Ana, and Foothill Ranch. Lucio Decl. ¶ 6.

Plaintiff Genny Vasquez is a former hourly, non-exempt employee of Red Robin, who has worked as a server and bartender primarily at Defendant's Irvine Spectrum location.  She was employed by Red Robin from approximately 2008 to 2018.  Id. at ¶ 7.

### B.   Defendant.

Defendant Red Robin is a Nevada corporation which operates a chain of casual dining restaurants throughout California and the United States. It is

set forth in *Vigueras I* and *Vigueras II* attached as Exhibit A to the Settlement Agreement.

headquartered in Colorado. Red Robin operated approximately 71 restaurants in the state of California during the Class Period. Id. at ¶ 9.

### C.   The Settlement Class.

On October 23, 2018, the Court certified the following class:

> All persons who were employed by Defendant as non-exempt, hourly employees, however titled, in Defendant's restaurants in the State of California from July 14, 2013 to October 23, 2018.

On February 21, 2019, the Court decertified the Class as to the 2,612 Arbitration Subclass members who signed an arbitration agreement prior to the filing of this action on July 14, 2017.

Thus, the Class is defined as follows:

> All persons who were employed by Red Robin International, Inc. as non-exempt, hourly employees at Red Robin's restaurants in California from July 14, 2013 to October 23, 2018 and who were not excluded as part of Defendant's motion to decertify the class based upon pre-dispute arbitration agreements signed before July 14, 2017.

Settlement Agreement ¶ 7.

The PAGA Group is defined as follows:

> All persons who were employed by Red Robin International, Inc. as non-exempt, hourly employees at Red Robin's restaurants in California from September 21, 2016 to the date the Court grants preliminary approval of the Settlement or June 30, 2020, whichever is earlier.

Id. ¶ 8.

Collectively, the Class Members and PAGA Group Members comprise the Settlement Class. Id. ¶ 33. There are an estimated 16,790 Class Members and

14,500 PAGA Group Members. Lucio Decl. ¶ 8. Some Class Members are also PAGA Group Members. Id.

## III. PROCEDURAL AND LITIGATION HISTORY

### A. *Vigueras* I Action.

On July 14, 2017, Plaintiff Manuel Vigueras filed a class action complaint against Red Robin in Orange County Superior Court alleging that Defendant (1) failed to pay all wages owed, including overtime; (2) failed to provide meal periods for class members; (3) failed to authorize and permit rest periods for the class; (4) knowingly and intentionally failed to comply with itemized wage statement provisions; (5) failed to timely pay wages due at termination; and (6) violated the Unfair Competition Laws. On August 16, 2017, Defendant filed its answer. Defendant then removed the case to the United States District Court for the Central District of California, Southern Division and it was assigned Case No. 8:17-Cv-01422-JVS (DFMX). Id. at ¶ 9.

On November 1, 2017, Plaintiff filed a First Amended Complaint alleging claims for: (1) failure to pay all wages owed, including overtime; (2) failure to provide lawful meal periods; (3) failure to authorize and permit lawful rest periods; (4) knowing and intentional failure to comply with itemized employee wage statement provisions; (5) violations of the unfair competition law. Id. at ¶ 10.

### B. *Vigueras* II Action.

On September 21, 2017, Plaintiff filed a separate complaint against Defendant in the Orange County Superior Court alleging a single cause of action under the Private Attorneys General Act, Labor Code section 2698 *et seq.* seeking civil penalties based on alleged violations of California Labor Code sections 201, 202, 203, 204, 218.5, 218.6, 221-224, 226, 226.3, 226.7, 510, 512, 558, 1174, 1174.5 1194, 1197, 1198, 2698 *et seq.*, 2802 and Wage Order No. 5. On February 20, 2018, Plaintiffs amended the complaint to add Genny Vasquez as a

representative. The factual allegations in Vigueras II are substantially similar to the factual allegations alleged in Vigueras I. Id. at ¶¶ 11-12.

### C.   Class Certification.

On October 23, 2018, the Court granted Plaintiff's Motion for Class Certification. The Court certified the following class: "All persons who are employed or have been employed by Defendant as non-exempt, hourly employees, however titled, in Defendant's restaurants in the state of California from July 14, 2013 to the present." The Court also certified six subclasses: First Meal Period Subclass, Second Meal Period Subclass, Rest Period Subclass, Indemnification Subclass, Unfair Business Practices Subclass, and Arbitration Subclass. Id. at ¶ 13.

### D.   Decertification.

On February 21, 2019, the Court granted Defendant's motion to decertify as to the 2,612 Arbitration Subclass members who signed arbitration agreements before the Complaint in *Vigueras I* was filed on July 14, 2017.  On October 21, 2019, the Court denied Defendant's second motion to decertify the certified class or modify the subclasses. Id. at ¶ 14.

### E.   *Vigueras* I Motions for Summary Judgment/Adjudication.

On June 24, 2019, Defendant filed a Motion for Summary Judgment, or in the Alternative Partial Summary Judgment, as to Plaintiff's individual and class claims. On July 8, 2019, Plaintiff filed a Motion for Partial Summary Judgment as to Plaintiff's meal period claim, rest period claim, expense reimbursement claim, and unfair competition claim. On August 19, 2019, the Court denied Plaintiff's Motion for Partial Summary Judgment and denied Defendant's Motion for Summary Judgment except for Plaintiff's claim for failure to reimburse expenses for uniforms from August 2015 to the end of the Class Period. Id. at ¶ 15.

### F.   *Vigueras* II Motion for Summary Adjudication.

On September 19, 2019, Plaintiffs filed a Motion for Summary Adjudication on certain of Defendant's affirmative defenses in Vigueras II. On

December 5, 2019, the state court denied summary adjudication. Id. at ¶ 16.

### G.    Mediations.

The Parties attended three full day mediation sessions. The first mediation took place with experienced wage and hour mediator Joel Grossman on March 29, 2018 in Los Angeles, California.   The second mediation took place with experienced wage and hour mediator David Rotman on March 21, 2019 in San Francisco, California. In addition, the week before trial, the Parties attended a third full day mediation session with experienced wage and hour mediator Mark Peters in San Francisco, California. The Parties were unable to reach a settlement at the mediations, however they continued to discuss possible settlement throughout the litigation and during trial. Id. at ¶ 21.

### H.    *Vigueras* I Trial.

On February 25, 2020, Plaintiff and Defendant began a jury trial in this Court. The Court ruled on the Parties' motions in limine, impaneled a jury and the Parties gave their opening statements. Plaintiff was called to testify and Defendant cross-examined Plaintiff. On February 28, 2020, the Parties reached a global settlement of the claims in *Vigueras I* and *Vigueras II* for $8,500,000.00.  The Parties informed the Court that they would present a long-form Settlement Agreement to the Court for approval.  The Settlement which was memorialized on the record is now the subject of the proposed Settlement Agreement.  Id. at ¶ 17.

## IV.   DISCOVERY HISTORY

The Parties conducted significant investigation of the facts and law in this case. Such discovery and investigation included but was not limited to the exchange of information through informal and formal discovery; extensive written discovery and law and motion practice; numerous conferences between Class Counsel and Defendant's counsel throughout the litigation and in advance of trial; multiple PMQ and corporate management depositions including the depositions of Andy Mulz (Director of Operations), Matthew Chaffee (Business

Solution Architect for Human Resources), Karin Davie (Human Resources Business Partner) (twice), Peter Owens (Labor Management), Claire Helen Simpson (Human Resources Director), Adin Philleo (Plaintiff's manager), Deepal Liyange (Plaintiff's Assistant Manager); Expert depositions; Plaintiffs' depositions; multiple class member depositions throughout the State of California; substantial document production; and interviews of class member percipient witnesses. Defendant also produced a large volume of documents and data concerning the putative class members prior to multiple mediations. The Parties also retained experts to assist in their respective investigations and had them deposed during the Actions. Counsel for the Parties investigated the law as applied to the facts discovered regarding the alleged claims of the Settlement Class Members and potential defenses thereto, and the damages and penalties claimed by the Settlement Class Members. Id. at ¶¶ 19-20.

## V. SUMMARY OF PROPOSED SETTLEMENT TERMS

### A. The Gross Settlement Amount.

The Parties have agreed (subject to Court approval), that the Settlement Class claims be settled and compromised for the Gross Settlement Amount of $8,500,000.00, no part of which may revert to Defendant, and which includes (a) Participating Class Members' Individual Settlement Payments; (b) attorneys' fees of up to $2,833,050.00 (33.33% of GSA) to compensate Class Counsel for all work performed and all work remaining to be performed in finalizing and administering the Settlement and securing final Court approval; (c) Class Counsel's actual litigation costs and expenses not to exceed $375,000.00; (d) Class Representative Enhancement Payments of $37,500.00 to Plaintiff Manuel Vigueras and $17,500.00 to Plaintiff Genny Vasquez, in consideration of their initiation and prosecution of the Actions, serving as Class Representatives, work performed, risks undertaken for the payment of costs in the event the cases had not successfully concluded, the substantial benefits conferred on the Settlement Class, and a general release of all

claims; (e) PAGA Penalty Payment of $250,000.00 attributable to Plaintiffs' claims pursuant to PAGA[2]; and (f) Settlement Administrator expenses to ILYM Group, Inc. of up to $135,000.00, to provide notice of the settlement and distribute settlement payments to the Settlement Class. Id. at ¶ 24. In addition to the Gross Settlement Amount, Red Robin will pay the employer's share of payroll taxes. Id.

### B. The Net Settlement Amount.

After all Court-approved deductions, the remaining Net Settlement Amount is estimated to be $4,851,950.00 will be distributed to all Participating Class Members (i.e. Class Members who do not exclude themselves or "opt-out" of the Settlement) based proportionately on the number of weeks worked and the number of shifts worked over five hours for Red Robin during the class period in relation to all Participating Class Members. The Settlement further provides that Participating Class Members will receive their share of the NSA automatically without having to return a claim form. Id. at ¶ 25.

The non-reversionary nature of the Settlement guarantees that any amounts not distributed to Class Counsel for attorneys' fees and costs, to the Settlement Administrator for administration costs, or to the Class Representatives for enhancement  payments will remain part of the NSA and be distributed among the Participating Class Members. In other words, no portion of the Settlement will revert to Defendant under any circumstances. All uncashed Individual Settlement Payment checks will be sent to the California State Controller's Office Unclaimed Property Fund. Id. at ¶ 28.

### C. Formula for Calculation of Individual Settlement Payments to Participating Class Members.

The Settlement Administrator will calculate the Individual Settlement Payment amount for each Participating Settlement Class Member. To make this

---

[2] California Labor Code Section 2699(l)(2) provides as follows: "The superior court shall review and approve any settlement of any civil action filed pursuant to this part."

calculation, the Settlement Administrator shall use the following formula:

(a)     One point for each workweek a Class Member worked a shift as a non-exempt restaurant employee on the payroll of Defendant at any time during the Class Period ("Individual Workweeks").

(b)     One additional point for each shift a Class Member worked over five hours ("Over 5 Hour Shifts").

The Settlement Administrator will calculate each Class Member's individual share of the NSA as follows: 1) The total number of points earned by all Class Members that were employed in the Class Period based on the information provided to the Settlement Administrator will be added together, which sum is referred to as the "Total Class Points;" (2) The Individual Points of each Class Member will be calculated by adding together the points earned based upon the Class Member's number of workweeks and shifts specified in Paragraphs 52(a) and/or (b); (3) The Total Individual Points of each Class Member will be divided by the Total Class Points, and the result is referred to as the Class Member's "Percentage Share;" and (4) The Net Settlement Amount shall be multiplied by each Class Member's Percentage Share, and the result of this multiplication is the Class Member's Individual Settlement Payment.   The Individual Settlement Payments will be reduced by any required deductions for each Class Member as set forth in this Settlement Agreement.  For example, Jane Doe Settlement Payment = [(Jane Doe Individual Points / Total Class Points) x Net Settlement Amount] less required withholdings].  Id. at ¶ 29.

**D.     Formula for Calculation of Individual PAGA Payments to PAGA Group Members.**

All PAGA Group Members will receive their individual share of the PAGA Penalty Payment proceeds automatically, without the requirement for the return of a claim form.  Each PAGA Group Member will receive an Individual PAGA Payment which is a share of the PAGA Penalty Payment calculated as follows:

    (a)    For each PAGA Group Member, the Settlement Administrator will calculate the number of workweeks the PAGA Group Member worked at least one shift as a non-exempt restaurant employee on the payroll of Red Robin at any time during the PAGA Period ("Individual Qualifying Workweeks").

    (b)    The value of each Individual Qualifying Workweek shall then be determined by dividing the portion of PAGA Penalty Payment to be paid to PAGA Group Members by the Total Qualifying Workweeks for all PAGA Group Members, resulting in the "Qualifying Workweek Value." Each PAGA Group Member's Individual PAGA Payment shall then be determined by multiplying the PAGA Group Member's Individual Qualifying Workweeks by the Qualifying Workweek Value.

Id. at ¶ 30. These formulas provide a fair and adequate method of distribution of the Settlement proceeds to the Settlement Class Members in this case. Id. at ¶ 31.

**E.    The Settlement Administrator and Notice to the Class**.

ILYM Group, Inc., the Settlement Administrator selected by the Parties to administer the Settlement, will conduct a search of the National Change of Address database to update Settlement Class Member addresses, and will thereafter mail to each Settlement Class Member identified on the Class List a Notice of Settlement of Class and Representative Action Lawsuit (the "Class Notice"). Id. at ¶ 32; Exhibit B to Settlement Agreement.

The Class Notice shall provide (1) information regarding the nature of the Actions, (2) a summary of the Settlement's principal terms, (3) the Class Member and PAGA Group Member definitions, (4) his or her Individual Points as a Class Member and/or Individual Qualifying Workweeks as a PAGA Group Member, (5) each Settlement Class Member's estimated Individual Settlement Payment and/or Individual PAGA Payment and the formula for calculating the Settlement

Payments, (6) the dates which comprise the Class and PAGA Group periods, (7) instructions on how to submit valid Requests for Exclusion or objections for Class Members only, (8) the deadlines by which the Class Member must fax or postmark a Request for Exclusion or file and serve objections to the Settlement, and (9) the claims to be released, as set forth in this Settlement Agreement. Id. at ¶ 33; Exhibit B to Settlement Agreement.

**F.    The Released Claims.**

All Class Members who do not submit a valid and timely request for exclusion will release the following claims against the Released Parties:

> Release of Claims by All Class Members. Upon the Effective Date, each and every Participating Class Member shall be deemed to have fully, finally and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all Released Class Claims, and shall be permanently barred and enjoined from the institution or prosecution of any and all Released Class Claims against the Released Parties, except as to such rights or claims as may be created by the Settlement, subject to the continuing jurisdiction of the Court.

All PAGA Group Members will release the followings claims against the Released Parties:

> Release of Claims by All PAGA Group Members.  Upon the Effective Date, each and every PAGA Group Member shall be deemed to have fully, finally and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all Released PAGA Claims, and shall be permanently barred and enjoined from the institution or prosecution of any and all Released PAGA Claims against the Released Parties, except as to such rights or claims as may be created by the Settlement, subject to the continuing jurisdiction of the Court.

Lucio Decl. ¶¶ 34-35. In addition to the Released Claims above, Plaintiffs will give an individual general release of all claims against the Released Parties. Id. ¶ 36.

## VI.   THE CLASS HAS BEEN CERTIFIED.

On October 23, 2018, the Court certified the Class, finding that Plaintiff met the class certification requirements of Rule 23 of the Federal Rules of Civil Procedure. Doc. No. 48. On February 21, 2019, the Court decertified the Class as to the 2,612 Arbitration Subclass members who signed an arbitration agreement prior to the filing of this action on July 14, 2017. (Doc. No. 73). Thus, the Class defined in the Settlement Agreement is consistent with the Court's prior certification of the Class and decertification as to those Class Members who signed arbitration agreements prior to the filing of this action.

## VII.   THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT AND SET A FINAL APPROVAL HEARING

Class action settlements are subject to court review and approval under the Federal Rules of Civil Procedure. A class action may not be dismissed, compromised, or settled without the approval of the Court. FRCP Rule 23(e). The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000), citing *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1238 (9th Cir. 1998).

This procedure safeguards Class Members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (2002) ("*Newberg*"), §§ 11.22, *et seq*.  The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of reasonableness," and whether notice to the Class and a formal fairness hearing are appropriate. *See Newberg* § 11.25.

At this stage, the Court is not making a final determination on whether the

settlement is fair, reasonable, and adequate, as is ultimately required by FRCP Rule 23(e) Rather, the Court need only decide whether the settlement "appears to fall within the range of possible approval." *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzel v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Berry v. School Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (the court first must determine "whether the proposed settlement is potentially approvable"); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (likening preliminary approval to a finding there is "probable cause" to submit the settlement to the class and to hold a full-scale final approval hearing); *Newberg* § 11.25.

Courts must give "proper deference" to settlement agreements, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citations omitted.)

The Court's determination of whether a proposed settlement is fair, adequate, and reasonable is often said to require a balancing of several factors. These factors may include, among others: "the strength of plaintiff's case; the risk, expense, complexity, and the likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1385 (9th Cir. 1993) (citation and internal quotations omitted). A

discussion of these factors supports the conclusion the proposed Settlement is "fair, adequate and reasonable."

### A. Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation.

Plaintiffs recognized the inherent risks and uncertainty of litigation, including that the Settlement Class could receive nothing, and understand the benefit of providing a significant settlement sum now. The specific risks include: (i) the possibility of decertification of all or part the Class at trial; (ii) the need for a unanimous jury; (iii) the possibility of an unfavorable, or less favorable, verdict at trial; (iv) the likely possibility that post-trial motions may result in an unfavorable, or less favorable, result at trial; and/or (v) the possibility of an unfavorable, or less favorable result on appeal, and the certainty that the appeal process would be lengthy. Lucio Decl. ¶ 37; Declaration of James R. Hawkins ("Hawkins Decl.") ¶ 7.

Plaintiffs' claims involve complex and disputed legal issues and fact-specific arguments which the Parties have litigated heavily since inception of the Actions. While Plaintiffs firmly believe in the strength of their claims, Red Robin has strong defenses to Plaintiffs' claims, and those defenses created a real possibility that the jury would not have unanimously found in favor of Plaintiffs and the Class if the trial had proceeded to a verdict. Lucio Decl. ¶ 38; Hawkins Decl. ¶ 8.

The essence of the Actions is that Plaintiffs contend that Defendant maintained illegal policies and practices that did not provide and/or authorize and permit its employees meal and rest periods absent request.  Plaintiffs contended that Defendants Just Say Yes poster stating the policy and practice of "request then provide" or "request then authorize and permit" violated California law.  As a result, Plaintiffs asserted that Defendants policies did not provide for meal or rest periods as required by Labor Code §§ 512, 226.7, Wage Order No. 5-2001, as well as *Brinker v. Superior Court*, 53 Cal. 4th 1004 (2012) (*Brinker*). Furthermore,

Plaintiffs contended that Defendant had failed to provide any mechanism for the reimbursement of expenses to employees, even though employees routinely incurred expenses for items such as pens, pencils, aprons, notepads, server books and other work related items. Lucio Decl. ¶ 43.

Defendant presented arguments to all contentions made by Plaintiffs as to certification, liability, and damages. Defendant argued that its meal and rest period policies set forth in the California Addendum to its Employee Handbook indisputably complied with California law. Defendant argued that although the Just Say Yes poster did apply to all Class members, it does not result in any violation of the law. Defendant argued that the Just Say Yes policy demonstrates Red Robin's proactive commitment to providing Team Members with breaks anytime they want one and instructing managers to "just say yes, no matter the circumstances." Defendant's further argued that Plaintiff's testimony and the declarations of more than 200 Class members revealed that Red Robin never rejected a request by a Class member to take a meal period. Id. ¶ 44.

Proceeding through trial would impose a significant risk of no recovery. If the proposed Settlement had not been achieved, continued trial of the class claims in this action and the PAGA claims in the related action carried the possibility that no benefit would be conferred upon the Settlement Class. By contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Settlement Class, without the need for additional time or judicial resources including the strong possibility of an appeal. Id. ¶ 39; Hawkins Decl. ¶ 9.

In the face of these uncertainties, the Parties agreed to a non-reversionary settlement of $8,500,000.00 during trial. This recovery is certain and substantial for the Settlement Class. Lucio Decl. ¶ 50; Hawkins Decl. ¶ 9.

**B.     The Extent of Discovery and Stage of the Proceedings Support the Settlement.**

As shown by the litigation and discovery histories, the Parties thoroughly

investigated and evaluated the case and engaged in sufficient investigation and discovery to support the Settlement. Lucio Decl. ¶ 40. The litigation has reached the stage where the parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

With exhaustive discovery completed, voluminous documents reviewed and analyzed, class certification, multiple Rule 30(b)(6) and party depositions completed, mediation, and the beginning of the trial, it is clear that the case reached a stage supporting settlement. Id.

## C.   The Settlement is the Product of Serious, Informed and Non-Collusive Negotiations between Experienced Wage and Hour Counsel

"In the Ninth Circuit, a Court affords a presumption of fairness to a settlement, if: '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery to allow counsel to act and the Court to review their actions in an informed manner; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Rodriguez v. W. Publ'g Corp.*, No. CV-05-3222 R(MCx), 2007 U.S. Dist. LEXIS 74849, at *33 (C.D. Cal. Aug. 10, 2007). Three out of the four factors are clearly met, and the fourth must be evaluated after preliminary approval and notice to the Class.

The proposed Settlement was reached through a fair compromise of disputed claims arrived at through substantial exchange of information, exhaustive analysis, extensive investigation, and arm's-length negotiations through the assistance of three separate mediators and counsel.

Class Counsel, James Hawkins, APLC, has significant experience in litigating minimum wage, overtime, and rest and meal period cases, and other wage and hour class cases. Hawkins Decl. ¶¶ 3-5; Lucio Decl. ¶ 41. Likewise, Defendant's counsel, Fisher & Phillips, LLP, are also well experienced in wage and

1   hour employment law and class actions. Id.

2       Experienced counsel, operating at arm's-length, have weighed the strengths

3   of the case and examined all of the issues and risks of litigation and endorse the

4   proposed Settlement. The view of the attorneys actively conducting the litigation

5   "is entitled to significant weight" in deciding whether to approve the settlement.

6   *Fisher Bros. v. Cambridge Lee Industries, Inc.,* 630 F.Supp. 482, 488 (E.D. Pa.

7   1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd.*

8   661 F.2d 939 (9th Cir. 1981). "The recommendations of plaintiffs' counsel should

9   be given a presumption of reasonableness" *In re Omnivision Technologies, Inc*.,

10  559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007), citing *Boyd v. Bechtel Corp., supra*,

11  485 F.Supp. 610, 622.)

12      Class Counsel, having prosecuted many wage and hour class actions, are

13  experienced and qualified to evaluate the Settlement Class claims and to evaluate

14  the risks and potential outcome of further litigation and the propriety of settlement

15  on a fully informed basis. Hawkins Decl. ¶¶ 3-5.

16      Counsel on both sides share the view this is a fair and reasonable settlement

17  in light of the complexities of the case, the state of the law including *Brinker*, and

18  of the uncertainties of the outcome of litigation. The opinion of counsel in support

19  of the proposed Settlement is based on a realistic assessment of the strengths and

20  weaknesses of their respective cases, extensive legal and factual research, and the

21  substantial discovery detailed above. The opinion of counsel is also based on an

22  assessment of the risks of proceeding with the litigation through the end of trial and,

23  if a verdict were recovered, through appeal as compared to the value of a settlement

24  at this time. Given the risks inherent in litigation and the defenses asserted, this

25  Settlement is fair, adequate, and reasonable and in the best interests of the

26  Settlement Class and should be preliminarily approved. Lucio Decl. ¶ 42.

27      **D.   The Proposed Settlement is a Reasonable Compromise of Claims.**

28

17

Class Counsel believes the proposed Settlement is in the best interest of the Settlement Class based on detailed knowledge of the factual and legal issues presented in the Actions. Counsel considered, among other issues, the risks of obtaining a unanimous verdict at trial and the possibility of appeals that affect the value of the claims in reaching the proposed Settlement. Class Counsel also considered that a potential unfavorable result at trial in *Vigueras I* could result in a dismissal or compromise of the PAGA claims in *Vigueras II*. Id. at ¶ 49.

Plaintiffs' main class claims against Defendant have been for unpaid premiums for missed meal periods and rest breaks and unreimbursed expenses. Plaintiffs allege Defendant did not provide Class Members meal periods in the first instance because Class Members had to request a meal period before one was provided. Plaintiffs also alleged that Defendant failed to reimburse Class Members for expenses incurred for pens, pencils and notepads needed to do their job. Moreover, Plaintiffs have alleged derivative claims failure to provide accurate itemized wage statements, waiting time penalties, and unfair competition. In addition, Plaintiffs alleged violation of PAGA for the underlying labor code violations. Lucio Decl. ¶¶ 43-47

Accordingly, Plaintiffs' counsel gave serious consideration to all facts and arguments and concluded the terms and amount of the Settlement are fair and reasonable. As discussed above, Defendant asserted multiple defenses, and have expressly denied and continue to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Actions. Plaintiffs' counsel analyzed the merits of the class claims, and each one presented significant hurdles. The recovery of $8,500,000.00 for the Settlement Class is an excellent result, considering the risks of maintaining class action status through trial and after appeal, and the possibility Plaintiffs would not unanimously prevail at trial, or would not obtain all damages claimed, as well as the delay and duration of the

litigation and appeals. Id. at ¶ 49.

A settlement is not judged *solely* against what might have been recovered had plaintiff prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska Partnership,* 151 F. 3d 1234, 1242 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig.,* 213 F. 3d 454, 459 (9th Cir. 2000). The adequacy of the amount recovered must be judged as "a yielding of absolutes. . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . ." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th  Cir. 1982) (citation omitted), "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not . . . render the settlement inadequate or unfair", "*Officers for Justice v. Civil Serv. Comm'n* (9th Cir. 1982) at 628; see also *In re Omnivision Technologies, Inc*. (N.D. Cal. 2007) 2007 U.S. Dist LEXIS 95616, at p. 21, noting that certainty of recovery in settlement of 6% of maximum potential recovery after reduction for attorney's fees was higher than median percentage for recoveries in shareholder class action settlements, averaging 2.2%-3% from 2002 through 2006.) Accordingly, the proposed Settlement is not to be judged against a speculative measure of what might have been achieved.

In light of all the information provided above, the proposed Settlement reflects an excellent recovery for the Settlement Class and is well within the "ballpark" of reasonableness and should be granted preliminary approval. Lucio Decl. ¶ 50; Hawkins Decl. ¶ 9.

### 1.    Plaintiffs' Meal and Rest Period Claims

Plaintiffs argued that Red Robin failed to authorize and permit and separately compensate Class Members for rest periods. Under Labor Code § 226.7, one hour of wages at an employee's regular rate must be paid if a rest period is not provided. Plaintiffs estimated one unpaid rest period premium per shift and projected damages

for unpaid rest period premiums to be $24,831,285. Plaintiff also estimated one unpaid rest period premium for each shift longer than five hours and projected damages for unpaid meal period premiums to be $20,036,335. The parties fundamentally disagreed over the employer's obligation to "provide" meal periods in accordance with Labor Code § 512 and *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004 (2012). Plaintiff contends that Defendant violated the mandates of Labor Code § 512 by (1) failing to provide meal periods in the first instance absent request, (2) impeding or discouraging the taking of lawful meal periods, and (3) purporting to allow employees to waive meal periods on shifts over six hours.

Defendant argued that to prove a violation under *Brinker*, an employee must show that an employer actually prevented the employee from taking breaks and that *Brinker* only requires that meal periods be made available. Defendant argued that Red Robin's Meal and Rest Period policy is set forth in its California Addendum to its Team Member Handbook. They contend that the policy indisputably complies with California law as it provides Team Members who work a shift of five (5) hours or more with a meal period of at least thirty (30) minutes, during which they are "completely relieved from duty," and authorizes and permits one ten (10) minute break for every four (4) hours worked or major fraction thereof.

However, Plaintiff argued that the statute and the California Supreme Court do not agree. Rather, the law imposes an actual affirmative obligation on the employer to "provide" meal periods to employees. *See, Hamilton v. Wal-Mart Stores,* Inc., 2019 U.S. Dist. LEXIS 77699 at *14 (C.D. Cal. Mar. 4, 2019); *see also, Hamilton v. Wal-Mart Stores, Inc.* 5:17- cv-01415-AB-KK, DE 350, p. 16-17 (C.D. Cal. Feb. 11, 2020 [rejecting defendant's argument that plaintiff must show that the subject practice "'actually prevents employees from taking meal breaks or off-site meal breaks,' reasoning that *Brinker* instead mandates that 'Plaintiffs need only present evidence from which a jury could conclude that the security check impedes

or discourages them from doing so.'"].

### 2.    Plaintiffs' Unreimbursed Expenses Claim

Labor Code section 2802(a) requires that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…"  Plaintiffs argued that Defendant had no policy or mechanism for reimbursement of expenses incurred by the Settlement Class including pens, paper, and uniforms.  Defendant argued that Plaintiff did not submit a single receipt for reimbursement during the entire litigation and that it reimbursed all expenses. Based on Plaintiffs' expert's questionnaire, Plaintiffs estimated damages for unreimbursed writing pads and instruments to be $4,554,639. However, Defendant filed a motion in limine challenging the reliability of Plaintiffs' expert's questionnaire. Lucio Decl. ¶ 47.

### 3.    Plaintiffs' PAGA Claim

The Private Attorneys General Act of 2004 ("PAGA") allows an aggrieved employee to bring suit against an employer for violations of most Labor Code provisions. Suits brought under PAGA do not affect the employee's right to recover other remedies under state or federal law. Labor Code § 2699(g); *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 375 (2005). The statute of limitations for PAGA suits is one year. The penalties available under PAGA are those provided in the underlying Labor Code provision that is violated or, if no penalty is expressly provided, those provide by PAGA itself. Where the Labor Code does not provide for a penalty, PAGA establishes a civil penalty of $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation. Labor Code § 2699(f). Wherever the Labor Code gives the Labor and Workforce Development Agency discretion to assess a civil penalty, a court is authorized to exercise the same discretion. Labor Code § 2699(e)(1). However,  Section 2699(e)(1) permits a Court

21

to award a lesser amount than the maximum civil penalty if based on the facts and circumstances to do otherwise would result in an award that is "unjust, arbitrary and oppressive or confiscatory."

In *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018), the Court of Appeal affirmed a judgment after trial which only provided for a PAGA penalty of $5 per pay period.  Therefore, at trial, any PAGA penalties awarded could be significantly less than the agreed upon amount of $250,000.00 even where Plaintiffs prevailed on the PAGA claim.

Under PAGA, Courts have considerable discretion to reduce the penalty award.  In *Fleming v. Covidien*, 2011 U.S. Dist. LEXIS 154590 (C.D. Cal. 2011), a federal court reduced PAGA penalties from $2,800,000 to $500,000, a reduction of 82.2%, because the court found maximum penalties "unjust" because the employees had suffered no injuries. Some trial courts have actually awarded no civil penalties, even when Labor Code violations are established.  See *Makabi v. Gedalia*, 2016 Cal. App. Unpub. 1489, *5 7 (2nd Dist. Ct. of App. Mar. 6, 2016) (no PAGA penalties were awarded by the Los Angeles County Superior Court) (unpublished decision); *In re Taco Bell Wage & Hour Actions*, 2016 U.S. Dist. LEXIS 48557, *40 43 (E.D. Cal. Apr. 6, 2016) (PAGA penalties denied after trial).

In order to recover any PAGA penalties, Plaintiffs would be required at trial to prove each of the underlying Labor Code violations.  See *Cardenas v. McLane Foodservice, Inc.*, 2011 U.S. Dist. LEXIS 13126, *10 (C.D. Cal. 2011) ("Given the statutory language [of PAGA], a plaintiff cannot recover on behalf of individuals whom the plaintiff has not proven suffered a violation of the Labor Code by the defendant.").  Here, Plaintiffs would need to prove that each PAGA Group Member suffered all violations for each pay period the employee worked.

Given Defendant's potential defenses to the violations at issue, the risks and costs of continued litigation, Plaintiffs and Class Counsel believe that the PAGA

1   Penalty Payment is fair and reasonable allocation of the GSA. Lucio Decl. ¶ 48.

2      1.      As set forth in the accompanying proof of service, the LWDA has been

3   provided notice of this motion and the PAGA settlement.  The decision of LWDA to

4   accept the PAGA settlement and not oppose the motion should be given considerable

5   weight as the decision of LWDA to accept the PAGA settlement and not oppose the

6   motion should be given considerable weight as the LWDA is a sophisticated

7   government entity that is more than able to look out for its own rights.  Lucio Decl.

8   ¶ 48.

9   **VIII. CLASS COUNSELS' ATTORNEYS' FEES REQUEST AND CLASS**

10      **ENHANCEMENT PAYMENTS.**

11      **A.      Motion for Award of Attorneys' Fees and Litigation Costs.**

12      In the Ninth Circuit, a district court has discretion to apply either a lodestar

13   method or a percentage-of-the-fund method in calculating a class fee award in a

14   common fund case. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997,

15   1006 (9th Cir. 2002).   When applying the percentage-of-the-fund method, an

16   attorneys' fees award of "twenty-five percent is the 'benchmark' that district courts

17   should award." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)

18   (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.

19   1990)).   However, a district court "may adjust the benchmark when special

20   circumstances indicate a higher or lower percentage would be appropriate." Id.

21   (citing *Six Mexican Workers*, 904 F.2d at 1311). "Reasonableness is the goal, and

22   mechanical or formulaic application of either method, where it yields an

23   unreasonable result, can be an abuse of discretion." *Fischel*, 307 F.3d at 1007.

24      Here, Class Counsel will file a motion at the time of final approval requesting

25   reimbursement of their litigation expenses of up to $375,000.00 and an award of

26   attorneys' fees not to exceed $2,833,050.00 or 33.33% of GSA, which Defendant

27   does not oppose. Class Counsel's fee request of 33.33% of the GSA constitutes a

28   reasonable fee and any upward departure from the benchmark is warranted given

the procedural history detailed above and Class Counsel's undertaking of a complex, risky, expensive, and time-consuming case to trial on a contingency fee basis. Lucio Decl. ¶ 51.

## B.   Class Representatives Enhancement Payments.

Class representatives "are eligible for reasonable incentive payments. The district court must evaluate their awards individually, using 'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class had benefited from those actions, the amount of time and effort the plaintiff in pursuing the litigation." *Staton v. Boeing Corp*., 327 F.3d 938, 977 (9th Cir. 2003) [citations and internal alterations omitted].

Subject to the Court's approval at the time of the final approval hearing, Class Plaintiffs will request $37,500.00 to Manuel Vigueras and $17,500.00 to Genny Vasquez for their time, effort, risks undertaken for the potential payment of costs in the event the Actions had been unsuccessful, possible retaliation by employers, for a general release of all claims, and termination of Vigueras's employment. The requested enhancement payments are fair and reasonable because Plaintiffs were instrumental in achieving the Settlement in the Actions. Plaintiffs invested a great deal of time and effort into the investigation, prosecution, and the settlement of the Actions, as will be set forth in their declarations to be filed in conjunction with the motion for final approval of class action settlement. Lucio Decl. ¶ 52. See, e.g., *Singer v. Becton Dickinson & Co.,* 2010 U.S. Dist. LEXIS 53416 at *24-26 (S.D. Cal. June 1, 2010) ("The $25,000 incentive award is ... well within the acceptable range awarded in similar cases."]; discussing, *Brotherton v. Cleveland*, 141 F. supp. 2d 907, 913-14 (S.D. Ohio 2001) [approving $50,000 class representative payment to named plaintiff]; and *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (same); *Glass v. UBS Financial Services*, 2007 U.S. Dist. LEXIS 8476, 50-52 (N.D. Cal. Jan. 26, 2007) (approving $25,000 class

representative payment).

## IX.    CONCLUSION

Plaintiffs respectfully request the Court preliminarily approve the proposed Settlement, approve a appoint ILYM Group, Inc. as the Settlement Administrator, approve the Class Notice, and set a hearing date for final approval and Plaintiffs' request for award of attorneys' fees, costs and Class Representative enhancement payments.

Respectfully submitted,

**JAMES HAWKINS APLC**

Dated:  June 19, 2020

By: s/ Christina M. Lucio _____
James R. Hawkins
Christina M. Lucio
Mitchell J. Murray

Attorneys for Plaintiffs and the
Settlement Class